**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

JAY PAUL PORTON,

      **Plaintiff,**

v.                                       **Case No.: 8:14-CV-2847-T-17EAJ**

SP ONE, LTD., et al.,

      **Defendants.**

_____/

**REPORT AND RECOMMENDATION**

Before the Court is Defendants SP One, Ltd., et al.'s ("Defendants'") **Motion to Compel Plaintiff's Rule 26 Disclosures and Motion for Sanctions for Violation of Court Order**.[1] (Dkt. 27)  A hearing on the motion was held on March 17, 2015.  Based on the compelling evidence of Plaintiff's harassing and intimidating behavior towards Defendants, Defendants' employees, and Defendants' counsel, as well as Plaintiff's failure to comply with Court orders, Plaintiff's complaint should be dismissed with prejudice pursuant to the Court's inherent power to sanction litigants who abuse the judicial system through bad faith litigation.

**Procedural Background**

On November 14, 2014, Plaintiff Jay Porton ("Plaintiff"), proceeding pro se, filed a complaint against Defendants, alleging that Defendants discriminated against him because of his disability and retaliated against him for exercising his rights under the Fair Housing Act.  Plaintiff, a former a resident of a unit at the Viridian Senior Community ("the Viridian"), 518 3rd Avenue South, St. Petersburg, Florida, states that he is an individual with non-visible physical disabilities

---

[1] The motion has been referred to the undersigned for disposition or a report and recommendation (Dkt. 28). See 28 U.S.C. § 636(b)(1).

who was wrongfully evicted because he complained about mold spores in his unit.[2] (Dkt. 1 at 3)

Following service of process and filing an answer to Plaintiff's complaint, Defendants filed a Motion for Order to Prevent Witness Tampering and Intimidation on January 9, 2015. (Dkt. 13) Defendants alleged that Plaintiff had harassed and intimidated Defendants' employees and counsel and trespassed on Defendants' property.

At a hearing on January 23, 2015, Plaintiff acceded to Defendants' requests that he not visit the property or contact witnesses.[3] Defendants elected not to go forward with their evidence at that time.  However, the Court ordered that Plaintiff: not visit Defendants' property at any times or for any reasons; not call or otherwise contact Defendants' current employees or other agents; communicate with Defendants' counsel in a professional manner; and seek leave of Court prior to deposing any of Defendants' agents or current employees or entering or inspecting Defendants' property. (Dkt 22)  Additionally, Plaintiff was put on notice that failure to comply with the Order would subject him to sanctions, including dismissal of his action or a finding of contempt. (Id. at 2) A copy of the Order was provided to all parties before the hearing was adjourned, and the Court verbally ordered that the parties wait thirty days before beginning any discussions regarding the interviewing or deposing of Defendants' employees or any inspection and entry to Defendants' property.

Defendants filed the current motion to compel and for sanctions on March 3, 2015, alleging

---

[2] The Viridian is owned by Defendant SP One, Ltd. ("Defendant SP One") and is managed by Defendant Royal American Management, Inc. ("Defendant RAM").

[3] The parties jointly completed their Case Management Report ("CMR") and filed it at the conclusion of the hearing. (Dkt. 25)  The Case Management and Scheduling Order was entered on March 4, 2015. (Dkt. 29)

that Plaintiff had not provided his Rule 26(a)(1) disclosures by the thirty-day deadline the parties

agreed to in the CMR and that Plaintiff violated the Court's Order by sending an email containing

personal information about one of Defendants' employees.

On March 11, 13, 16, and 17, 2015, Plaintiff filed what the Court construes as responses to

Defendants' motion. (Dkt. 31, 33, 34, 36, 37)  In the first response, Plaintiff attached email messages

between himself and Defendants' counsel regarding his mistaken belief that the thirty-day period

applied to everything in the case and that he would complete and serve the initial disclosures within

thirty days of his March 5, 2015 email.  He also proposed a resolution to Defendants' motion for

sanctions, stating that "Plaintiff, as of 3/9/15, will not in any way E-mail the Defendant's Attorney."[4]

(Dkt. 31)  Plaintiff also requested that Defendants' motion be "dismissed." (Dkt. 33, 34, 35, 36)

### Legal Standard

"[D]eeply rooted in the common law tradition is the power of any court to 'manage its affairs

[which] necessarily includes the authority to impose reasonable and appropriate sanctions upon

errant lawyers practicing before it.'" Carlucci v. Piper Aircraft Corp., 775 F.2d 1440, 1447 (11th

Cir.1985) (citation omitted).  This power extends to parties to litigation. Chambers v. NASCO, Inc.,

501 U.S. 32, 45 (1991).  "The key to unlocking a court's inherent power is a finding of bad faith."

Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998).  Bad faith can be found where a party

knowingly or recklessly raises a frivolous argument, argues a meritorious claim for the purpose of

harassing an opponent, delays or disrupts the litigation, or hampers enforcement of a court order.

Id. (citation omitted).

---

[4] Plaintiff filed this response with the Clerk's Office, but the Clerk's Office did not scan the exhibits attached to Plaintiff's response because they contained personal identifiers, including his date of birth and Social Security number.

The most severe sanction, dismissal with prejudice, "may be appropriate when a plaintiff's recalcitrance is due to wilfulness, bad faith or fault." Phipps, 8 F.3d at 790.  In determining whether dismissal is proper, "the Court must consider [] whether the noncomplying party has: (1) acted with flagrant bad faith, (2) to the detriment of the other party, (3) through the fault of the noncomplying party, (4) where less drastic alternatives have already been tried." Watkis v. Payless Shoe Source, Inc., 174 F.R.D. 113, 116 (M.D. Fla. 1997) (citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639 (1976) (per curiam)).

Furthermore, a district court, under Rule 11, Fed. R. Civ. P., has the discretion to award sanctions "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." Worldwide Primates, Inc. v. McGreal, 87 F.3d 1252, 1254 (11th Cir. 1996).   "The bad faith element is determined by objective standards of reasonableness." Patterson v. Aiken, 841 F.2d 386, 387 (11th Cir. 1988) (per curiam).  "While this standard takes into account the special circumstances that often arise in pro se situations, pro se filings do not serve as an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." Id. (internal quotations and citation omitted).

Additionally, a district court may dismiss a complaint for failure to comply with a court order or the federal rules. Fed. R. Civ. P. 41(b).  "Dismissal under Rule 41(b) is appropriate where there is a clear record of 'willful' contempt and an implicit or explicit finding that lesser sanctions would not suffice." Gratton v. Great Am. Commc'ns, 178 F.3d 1373, 1374 (11th Cir. 1999) (citation

omitted).

Finally, "a district court has broad discretion to control discovery.  This power includes the ability to impose sanctions on uncooperative litigants." <u>Phipps v. Blakeney</u>, 8 F.3d 788, 790 (11th Cir. 1993) (citation omitted).  When a party fails to comply with a discovery order, Rule 37, Fed. R. Civ. P., provides that the court may impose sanctions, including striking pleadings, staying proceedings, rendering a default judgment, or dismissing the action in whole or in part. Fed. R. Civ. P. 37(b)(2).  "If a <u>pro se</u> litigant ignores a discovery order, he is and should be subject to sanctions like any other litigant." <u>Moon v. Newsome</u>, 863 F.2d 835, 837 (11th Cir. 1989).

## Discussion

Here, the facts demonstrate that Plaintiff has acted with flagrant bad faith to the detriment of Defendants.  At the March 17, 2015 hearing, Defendants presented compelling evidence of Plaintiff's harassing and intimidating conduct towards Defendants' employees and counsel.

Melissa Dugas ("Ms. Dugas") is a regional vice president of Defendant RAM, and the Viridian is one of the properties in her management portfolio.  She testified that Mr. Porton was evicted because he lied on his housing application by representing that he was not a convicted felon. (Dkt. 39 at 8)  Plaintiff has intimidated and harassed Ms. Dugas for the past two years.  After he was evicted but before filing this action, Plaintiff sent Ms. Dugas a package containing a DVD of a film depicting a landlord-tenant dispute where a tenant terrorizes a landlord and the landlord ends up shooting the resident.  Ms. Dugas stated, "I felt as if he was trying to send me that as a message that he was trying to intimidate me and was going to mimic the movie." (<u>Id.</u> at 12-13)

Plaintiff also left a number of harassing and intimidating voicemail messages on Ms. Dugas'

5

business phone after he filed this action.[5] (Defs.' Composite Ex. A)   These messages were left at various times of the day and night and various days of the week.[6]  Among other things, Plaintiff suggested he knew what church Ms. Dugas attended, he knew details about her family and daily activities, and he knew her personal address. (Dkt. 39 at 11-13)  Ms. Dugas testified that she felt intimidated by Plaintiff, that Plaintiff's behavior towards her over the last two years was nothing but harassing, and that she felt threatened because she did not know what Plaintiff was capable of doing. (Id. at 33-34)

    Plaintiff's conduct shows that his purpose in bringing this suit was to harass Defendants and their employees and that he was using the judicial process as a means to further this harassment. For example, in a November 15, 2014 message, Plaintiff informed Ms. Dugas that he had filed a civil action, stating, "It's a civil litigation lawsuit seeking extreme damages.  So hopefully again I'll see you in depositions and also we will see you at the trial.   Take care and stay well for the upcoming events." (Dkt. 39 at 9-10; Defs. Composite Ex. A)  Also, in a November 27, 2014 message, Plaintiff said, "Just want to let you know I've sent you your holiday present. It's being delivered by the U.S. Federal Marshals." (Dkt. 39 at 16; Defs. Composite Ex. A)  On December 3, 2014, Plaintiff left a message stating, "[Y]our real Christmas present is an amended complaint on the existing lawsuit which includes you personally as one of the defendants.  That's so that you can get your own legal counsel to defend this case.  And the U.S. Marshals will be delivering that to you

---

[5] Ms. Dugas also testified regarding voicemail messages left by Plaintiff before he filed this action, including one message from Plaintiff's phone number that contained only the sound of gun shots.

[6] When she received voicemail messages from Plaintiff, Ms. Dugas would record the message and forward it to her company's risk management department.

for me." (Dkt. 39 at 18-19; Defs. Composite Ex. A)  A December 9, 2014 message states: "We're going to file an injunction against your assets is how the way we'll handle this.  Yeah, we're going to freeze all your assets and attach all your assets and then put an amendment on there to garnish your wages so that will satisfy any lien requirements." (Dkt. 39 at 19; Defs. Composite Ex. A)  On December 19, 2014, Plaintiff said, "Just wanted to let you know we're working on the injunction to freeze your assets [inaudible] so don't spend too much money on Christmas so [inaudible] hopefully this injunction will be read and forwarded within a short period of time." (Dkt. 39 at 21; Defs. Composite Ex. A)  On December 24, 2014, Plaintiff suggested he and an investigator were conducting audio and visual surveillance of Ms. Dugas and another individual. (Dkt. 39 at 22; Defs. Composite Ex. A)

The voicemail message left by Plaintiff for Ms. Dugas on Thursday, December 25, 2014, at 6:06 a.m. is illustrative of his reprehensible conduct in this case towards Defendants and his spiteful intent.  In the message, Plaintiff stated:

> Hey, good morning, Missy.  I hope you had a good Christmas.  Yeah, I was just thinking, do you have any idea how much of a retainer that Ryan Hobbs had to get from Debbie and Patty?  You probably have to work for over a year free just for that. Now just think, we've got all these meetings and case conferences coming up and we've got depositions coming up and you know I'm going to drag it as long as I did like I did the last case.  And you've got the jury trial and then you've got the settlement.  You know, you're probably looking at four or five hundred thousand dollars total this is going to cost them, you know -- or you, you know.  But you're so glad you searched my apartment, I guess, huh?  It was worth it, wasn't it?  Have a good one.  Happy new year.

(Dkt. 39 at 23; Defs. Composite Ex. A)

This evidence of Plaintiff's egregious conduct demonstrates that  Plaintiff's motive in filing this case was to harass Defendants and Defendants' employees and to cause Defendants monetary hardship in the course of litigation.  The voicemail messages are convincing evidence of Plaintiff's

bad faith since he filed this action.

Additionally, Aisha Pena ("Ms. Pena"), also employed by Defendant RAM and the property manager of the Viridian since October 2014, has been harassed and intimidated by Plaintiff. In December 2014, Plaintiff walked into Ms. Pena's office at the Viridian and asked her for fifty dollars in exchange for an electronic key fob to the Viridian that he had in his possession. When Ms. Pena learned that Plaintiff had been evicted, she requested he return the key fob. When he refused, Ms. Pena's assistant called the police. Ms. Pena stated, " As I stood in front of the door, Mr. Porton stood next to me and [ ] threatened me and told me he was going to punch me in my F- - -ing face. And then at that point I did inform him again I was calling the police." (Dkt. 39 at 36)  Later that day, Plaintiff called Defendants' counsel, Ryan Hobbs ("Mr. Hobbs").  Plaintiff told Mr. Hobbs that he left once the police were called because he was a convicted felon and was, at the time, in possession of a firearm.[7] (Id. at 41-42)

This incident further illustrates Plaintiff's flagrant bad faith, as his visit to the Viridian and threat to harm Ms. Pena when she called the police was an attempt to harass Defendants. This is bolstered by the fact that Plaintiff called Mr. Hobbs about the incident soon after it occurred.

Defendants also attached two letters to their motion that Plaintiff sent to the Court's Courtroom Deputy after the hearing, which were also sent to Defendants' counsel, inquiring as to whether Plaintiff could file a complaint with the "Florida Bar Association" in lieu of filing a Rule 11 Motion and whether Plaintiff could file a complaint sheet with the United States Attorney's

---

[7] In their initial motion, Defendants attached an affidavit from Mr. Hobbs, which states that following the incident at the Viridian, Plaintiff emailed Mr. Hobbs that he had conducted background research on Mr. Hobbs, sent an email about his jury trial stating "BEWARE OF THE WOLF," and emailed a pornographic video. (Dkt. 13 Ex. 2 ¶¶ 11-13)  Mr. Hobbs did not testify about these matters at the March 17, 2015 hearing, however.

Office. (Dkt. 27 at 13-14)  Mr. Hobbs testified that he believed Plaintiff sent the letters in an effort to further intimidate him and Mr. Andrew Byrne, the other attorney of record for Defendants.[8] (Dkt. 39 at 63)

In the CMR, the parties agreed to exchange initial disclosures within thirty days. (Dkt. 25 at 1)  Plaintiff 's testimony that he mistakenly believed the thirty-day period before the parties could begin discussing depositions or property inspections was applicable to discovery in general and excused his duty to comply with the initial disclosure requirement of Rule 26, Fed. R. Civ. P., is not credible.  Within days of the January 23, 2015 hearing, Plaintiff endeavored to intimidate Defendants' counsel by inquiring with the Court whether he could file complaints against them with the Florida Bar and the United States Attorney's Office.  In any event, Plaintiff's failure to timely provide his initial disclosures to Defendants is only one example of his sanctionable conduct.

Finally, subsequent to being warned at the January 23, 2015 hearing that his failure to comply with the Court's Order would subject him to sanctions, including dismissal of his action or a finding of contempt, Plaintiff forwarded Defendants' counsel an email with a hyperlink to a Google search for Debra F. Koehler ("Ms. Koehler"), an executive level employee of Defendant SP One who was listed on Defendants' Rule 26 disclosures.  The hyperlink includes pages with information concerning the address of Ms. Koehler's personal residence. (Dkt. 27 ¶ 14)  The email was sent to Defendants' counsel after Defendants had served their Rule 26 disclosures and after Mr. Hobbs had emailed Plaintiff inquiring when he could expect to receive Plaintiff's Rule 26

---

[8] Plaintiff's inquiry as to whether he could file a complaint against Defendants' counsel in lieu of Rule 11 sanctions demonstrates that he was well aware of his obligation as a party to this litigation not to make representations to the Court that were for the improper purpose of harassing a party, causing unnecessary delay, or needlessly increasing the cost of litigation. Fed. R. Civ. P. 11(b)(1).

disclosures.  Upon receiving the email, Mr. Hobbs emailed Plaintiff back to inquire as to what Plaintiff was trying to convey with the message.  Mr. Hobbs also discussed the email with Ms. Koehler, who was alarmed by the email because of Plaintiff's other actions in this case. (Dkt. 39 at 43-45)

Plaintiff's email is yet another example of Plaintiff's intent to harass and intimidate potential witnesses in this case.  Rather than respond to Mr. Hobbs' email and explain the delay in providing discovery, Plaintiff instead elected to send the link with personal information about an individual identified on Defendants' initial disclosures.  Plaintiff's testimony that the email was meant to be positive or a "good will gesture" is not credible, especially in light of Plaintiff's harassing and intimidating behavior towards Defendants' employees, agents, and counsel during the course of this litigation.

The totality of the evidence demonstrates that Plaintiff filed this complaint to harass and intimidate Defendants and their counsel.  Plaintiff's conduct towards the parties, witnesses, and counsel throughout this case has been reprehensible.  Plaintiff is unlikely to comply with the Federal Rules of Civil Procedure and this Court's orders.  For these reasons, Plaintiff has forfeited his opportunity to pursue his complaint in this Court.  Even if his complaint did not violate Rule 11 at the outset, Plaintiff has engaged in harassing and intimidating conduct towards Defendants since this action was filed and has failed to comply with basic discovery obligations.

Plaintiff's actions "threaten the public's trust in our system of justice and disparage the core values for which it stands." See Quiroz v. Superior Bldg. Maint., Inc., No. 06-21594-CIV, 2008 WL

3540599, at \*5 (S.D. Fla. Aug. 12, 2008).[9]  No lesser sanction than dismissal of Plaintiff's complaint, with prejudice,[10] will prevent Plaintiff from harassing or intimidating Defendants, Defendants' counsel, and Defendants' agents and employees or from impeding the judicial system.[11]

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)    Defendants' Motion to Compel Plaintiff's Rule 26 Disclosures and Motion for Sanctions for Violation of Court Order (Dkt. 27) be **GRANTED** and that Plaintiff's complaint be dismissed with prejudice.

**DATE: March 19, 2015**

ELIZABETH A JENKINS
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party

---

[9] In <u>Quiroz</u>, the court dismissed with prejudice an action because the plaintiff attempted to tamper with witnesses by offering to pay a witness $1,000.00 for his favorable testimony.  Plaintiff's harassing and intimidating actions towards Defendants' employees, counsel, and potential witnesses are no less reprehensible.

[10] <u>See</u> <u>Black's Law Dictionary</u> 1837 (10th ed. 2014) (defining with prejudice as "[w]ith loss of all rights; in a way that finally disposes of a party's claim and bars any future action on that claim.").

[11] At the conclusion of the March 17, 2015 hearing, the Court cautioned Plaintiff that any further threatening, intimidating, or retaliatory conduct on his part towards any individual regarding his case could be punished as an obstruction of justice or otherwise. (Dkt. 39 at 75-56)

from attacking the factual findings on appeal. <u>See</u> 28 U.S.C. § 636(b)(1).

Copies to:
<u>Pro se</u> Parties
Counsel of Record
District Judge